UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CARY L. GUYER, JR.,

    Plaintiff,

v.

    CAUSE NO. 3:21-CV-56 DRL-MGG

WEXFORD OF INDIANA, LLC *et al.*,

    Defendants.

OPINION AND ORDER

Cary L. Guyer, Jr., a prisoner without a lawyer, filed an amended complaint alleging he has been denied adequate medical treatment. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant. "[T]o state a claim under [42 U.S.C.] § 1983 a plaintiff must allege: (1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006).

Mr. Guyer alleges that since summer 2019, he has suffered from frequent urination that has caused him increased pain over time. He has been prescribed Flomax and naproxen, but he does not say when. ECF 10 at 2. Flomax is a brand name for tamsulosin

that "is used in men to treat the symptoms of an enlarged prostate (benign prostatic hyperplasia or BPH) which include difficulty urinating (hesitation, dribbling, weak stream, and incomplete bladder emptying), painful urination, and urinary frequency and urgency. Tamsulosin is in a class of medications called alpha blockers. It works by relaxing the muscles in the prostate and bladder so that urine can flow easily." U.S. National Library of Medicine, https://medlineplus.gov/druginfo/meds/a698012.html. Naproxen "is used to relieve pain, tenderness, swelling, and stiffness . . .." *Id.*, https://medlineplus.gov/druginfo/meds/a681029.html. Mr. Guyer alleges neither medication has helped alleviate his symptoms, but it is unclear how long he has been taking them.

Mr. Guyer was given bladder re-training exercises sometime before August 12, 2020. 10-1 at 1. The instructions explain that "[b]ladder training takes time and effort, but it is an effective way to get rid of incontinence without medication or surgery." *Id*. Mr. Guyer makes no mention of having followed the bladder re-training instructions.

Mr. Guyer has been given blood and urine tests, but it is unclear when or how often. ECF 10 at 3. It is unclear what the tests showed; but when one urine test revealed a bladder infection, it was promptly treated. *Id*. He had a CT of his abdomen and pelvis on September 19, 2020, at an outside hospital. ECF 3-1 at 3. Marian P. Demus, MD, a board certified radiologist,[1] found he had mild splenomegaly, but no "acute Intra-abdominal or intrapelvic process [or] infradiaphragmatic lymphadenopathy nor masses." *Id*. at 4.

---

[1] Franciscan Health, https://www.franciscanhealth.org/find-a-doctor/marian-demus-1326146820

"Splenomegaly is a larger-than-normal spleen." U.S. National Library of Medicine, https://medlineplus.gov/ency/article/003276.htm.

> There are many things that might cause a spleen to enlarge, including:
> • Viral, fungal and bacterial infections
> • Hemolytic anemia, in which the spleen destroys healthy red blood cells
> • Blood clots of the veins from the spleen or liver
> • Liver diseases, including cirrhosis
> • Cancers, such as leukemia and lymphoma
> • Metabolic diseases (storage diseases, which are related to lack of enzymes), such as Gaucher disease
> • Sarcoidosis
> • Amyloidosis
> • Felty syndrome, a disorder that combines rheumatoid arthritis, a low number of white blood cells (called neutropenia), and an enlarged spleen

Cleveland Clinic, https://my.clevelandclinic.org/health/symptoms/17829-enlarged-spleen. Blood and urine tests might have been used to determine the reason for his minor splenomegaly, his need to urinate frequently, or some other condition. But it is unclear because Mr. Guyer does not say when he was tested or what results were obtained.

For medical professionals to be held liable for deliberate indifference to an inmate's medical needs, they must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Here, Mr. Guyer has received a number of medical treatments. Mr. Guyer disagrees with the medical care he is receiving, but "a disagreement with medical professionals . . . does not state a cognizable Eighth Amendment claim." *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). He does not believe he is receiving proper medical care, but

3

> medical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. The Constitution is not a medical code that mandates specific medical treatment.

*Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (quotation marks, citations, parenthesis, and brackets omitted). He says he is in pain, but "[t]o say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996).

> Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations. A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition.

*Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (quotation marks and citation omitted). Courts "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (quotation marks and citation omitted). Mr. Guyer argues that because he is having pain and a bladder infection associated with is frequent urination, he must be treated by a urologist. *See* ECF 10-1 at 3. However, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

4

The amended complaint is short on facts, dates, and specifics about the medical treatment he has received. Based on what it does say, it is not plausible to infer that he is not receiving constitutionally adequate medical care. A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (quotation marks, citations and footnote omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quotation marks and brackets omitted). Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original). The amended complaint does not plausibly allege the defendants acted outside the scope of professional judgment, practice, or standards.

This vague amended complaint does not state a claim. "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). Mr. Guyer was allowed to file this amended complaint after the court

5

found his prior complaint too vague to state a claim. *See* ECF 4. Having been notified of the defect and given the opportunity to provide more information, this case could be dismissed now. However, because it appears there is a great deal of additional information Mr. Guyer could provide about the medical treatment he is receiving, he will be given the opportunity to file another amended complaint if he believes it will demonstrate he is receiving constitutionally inadequate medical care. To do so, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. However, if after he reads this opinion, he does not believe he can provide facts that state a claim based on the legal standards explained in this order, he should not file another amended complaint.

For these reasons, the court:

(1) GRANTS Cary Guyer until **May 10, 2021**, to file an amended complaint on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form; and

(2) CAUTIONS Cary Guyer if he does not respond by the deadline, this case will be dismissed pursuant to 28 U.S.C. § 1915A without further notice.

SO ORDERED.

April 19, 2021                              *s/ Damon R. Leichty*
                                            Judge, United States District Court